DONALD LIPKE, Plaintiff-Appellee, v. CELOTEX CORPORATION *et al.*, Defendants-Appellants.

First District (2nd Division) No. 85—2960

Opinion filed March 10, 1987.

500

William C. Murphy, Craig S. Mielke, and Paul G. Krentz, all of Murphy, Hupp, Foote & Mielke, of Aurora, for appellant.

John M. Burke and Molly C. Mason, both of Burke & Burke, Ltd., of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, an asbestos worker, filed suit against 27 asbestos manufacturers to recover damages for personal injuries sustained as a result of continued exposure to defendants' asbestos products. Extensive discovery was conducted by all of the defendants. Plaintiff submitted to a discovery deposition over a six-day period, during which counsel for all of the defendants were present and had an opportunity to ask questions. All of the defendants, except Forty-Eight Insulations, Inc., arrived at an amicable settlement with the plaintiff prior to the commencement of this trial. This is the first asbestos case that was tried to verdict in Cook County. The jury awarded plaintiff $629,000 in compensatory damages and $175,000 in punitive damages. After the verdict and before disposition of its post-trial motion, defendant filed for protection under chapter 11 of the Bankruptcy Act (11 U.S.C. sec. 1101 *et seq.* (1982); Bankruptcy Case 85 B 05061). After denial of its post-trial motion, defendant filed this timely appeal.

Plaintiff's complaint is based upon the legal theories of negligence, wilful and wanton misconduct, and products liability. He seeks compensatory and punitive damages. The first line of defense was that the plaintiff did not have asbestosis but suffered from bronchitis or emphysema which was caused by plaintiff's habitual cigarette smoking. Defendant's fall-back position was that even if plaintiff had asbestosis, there was no evidence that he was exposed to defendant's products, and, therefore, defendant was not liable. Defendant also contends that if plaintiff was entitled to anything, it would only be compensatory damages for negligence and that punitive damages were not warranted under the facts of this case.

Plaintiff was employed as an insulator in the asbestos industry from about 1954 through 1980. As a pipe coverer, he insulated pipes,

boilers, and tanks in refineries, steel mills, chemical plants, schools, and commercial buildings. He identified certain asbestos products manufactured by defendant as some of the products he used in the course of his work. He never saw a label on any of defendant's products which warned users regarding health hazards.

Defendant manufactured products containing asbestos from 1923 until 1970. It never employed more than 220 people. Defendant never had a formal research or health department. However, defendant was a charter member of an industry group known as the National Insulation Manufacturer's Association (NIMA).

During trial, plaintiff's attorney read into the record sections of minutes taken at the NIMA meetings in 1958 and 1964. The defendant stipulated to the authenticity of these minutes. The minutes showed that two of defendant's representatives attended the 1958 meeting and that defendant was a "charter member of NIMA." They also showed that one of defendant's directors in attendance in 1964 was Ike Keith. At the 1964 meeting, Johns-Manville Sales Corporation reported that it was printing health and use warnings on its packages of asbestos products. The wording of these warnings cautioned the prospective user that "inhalation of asbestos in excessive quantities over long periods of time" could be harmful and urged the user to avoid breathing asbestos dust and to wear a respirator in the event of inadequate ventilation.

Plaintiff presented extensive evidence through his experts that literature regarding the dangers of asbestos was readily available to both physicians and members of the industry in the 1920's and thereafter. Defendant, as a charter member of NIMA, could have had access to this literature at any time.

Defendant received a letter from Dr. Irving Selikoff in the fall of 1969, advising the company that asbestos could be hazardous. Defendant also had discussions with the doctor regarding the exact nature of the hazard. Defendant's president testified that in July of 1970 it placed warnings on the bags of asbestos products and in December of 1970 it removed asbestos from its products. Plaintiff's evidence showed that the warnings did not mention the words "asbestosis" or "cancer" and did not indicate that a person who inhaled dust from the products could suffer any physical harm. Plaintiff also presented evidence that substitutes for asbestos were available so that defendant could have removed the asbestos sooner.

Plaintiff's condition was diagnosed as squamous cell cancer, which was caused by his continued exposure to asbestos. Portions of plaintiff's lungs were surgically removed. Asbestos bodies were found in

the removed sections. Plaintiff admitted smoking 1½ packs of cigarettes per day for 35 years, up to the date of his surgery. Squamous cell cancer is a common tumor associated with asbestosis and cigarette smoking. Defendant's medical expert testified that plaintiff did not have asbestosis, but that plaintiff suffered from bronchitis and emphysema. He concluded that the primary cause of plaintiff's medical problem was his history of cigarette smoking.

In plaintiff's answers to the original interrogatories, dated January 7, 1981, plaintiff listed "Forty-Eight Insulations" as a product to which he was exposed. Although there is no product specifically called "Forty-Eight Insulation," plaintiff testified that on the job, the product was referred to as "Webers" or "48" rather than its complete name. In plaintiff's answers to defendant's specific product interrogatories, dated January 26, 1985, plaintiff identified defendant's products as: "Weber's Forty-Eight Cement," "Weber's Super Forty-Eight Cement," "Super Forty-Eight Cement," "Quick-Set Cement," and "Blankets."

After filing answers to the original written interrogatories in 1981, plaintiff's discovery deposition was taken by all of the 27 original defendants over a period of six days. Although defendant was represented at the deposition, defendant did not cause the plaintiff to be questioned regarding the plaintiff's use of defendant's products. Other defense counsel questioned plaintiff extensively on the use of asbestos products of their respective clients. Defendant claims that when plaintiff testified about the use of its products at trial, he actually changed his testimony and that the trial court should not have permitted this to happen. Defendant argues that the theory of its case was that plaintiff was never exposed to its products. Permitting plaintiff to "change his testimony" erroneously frustrated this defense.

Defendant also contends that this and other evidentiary rulings by the trial court require a reversal or, at least, a new trial. Defendant further contends that the trial court erroneously submitted the issue of punitive damages to the jury and that the award of punitive damages was not warranted.

I

The major thrust of defendant's brief and argument is directed against the award of punitive damages. We believe that a more orderly disposition will be made if we first consider defendant's claim that it was the victim of a basic injustice because plaintiff was permitted "to change his testimony."

The record does not support defendant's assertion that the trial

court gave the plaintiff a "sword" while taking away defendant's "shield" when it permitted plaintiff to testify about his exposure to defendant's products. As previously mentioned, plaintiff faced a battery of attorneys representing 27 asbestos manufacturers when he gave his discovery deposition over a six-day period. As a matter of trial strategy, defendant's attorney chose not to question plaintiff. Plaintiff was preoccupied answering specific questions of the other manufacturers regarding their products. He was obviously well advised not to volunteer any information at his deposition, and he was not required to do so.

Defendant's products were identified generally in plaintiff's answers to written interrogatories submitted prior to the deposition. After the deposition, more specific answers were made in response to subsequent written interrogatories. Although plaintiff's testimony was consistent, the trial court permitted defendant to cross-examine the plaintiff about his failure to identify defendant's products at the deposition. Plaintiff said he did not identify the products because he was not asked to do so. On redirect examination, plaintiff's counsel asked him to state what his answer would have been if the question were asked at his discovery deposition. Defendant claimed that the question and answer were improper and speculative. The trial court properly permitted this testimony. Defendant opened the door and plaintiff gave him a direct and factual answer. *Department of Public Works & Buildings v. Exchange National Bank* (1976), 40 Ill. App. 3d 623, 634, 356 N.E.2d 376.

In his opening statement, defense counsel told the jury that plaintiff did not name defendant's products in his answers to written interrogatories and later cross-examined plaintiff regarding the answers. Defendant omitted the answers which did identify defendant's products. The trial court allowed plaintiff to read the answers that identified those products over defendant's objection. The objection was properly overruled. (*People v. Gary* (1976), 47 Ill. App. 3d 1026, 365 N.E.2d 501.) The record shows that plaintiff did not change his testimony but rather gave oral and written answers prior to trial that were consistent with his trial testimony.

## II

Defendant contends that the evidence does not support the assessment of punitive damages. It seeks a reversal or a new trial because the trial court erred in submitting the issue of punitive damages to the jury, the jury erred in awarding punitive damages, and the award was excessive.

## A

■ It is for the trial court to determine whether the plaintiff has proved misconduct aggravated enough to present the issue of punitive damages to the jury. (*O'Brien v. State Street Bank & Trust Co.* (1980), 82 Ill. App. 3d 83, 401 N.E.2d 1356, *appeal denied* (1980), 81 Ill. 2d 594.) This court, in *Moore v. Jewel Tea Co.* (1969), 116 Ill. App. 2d 109, 253 N.E.2d 636, *aff'd* (1970), 46 Ill. 2d 288, 263 N.E.2d 103, held that "whether an act is wilful and wanton is greatly dependent upon the particular circumstances of each case. Valid jury questions of wilful and wanton conduct have been presented by as little as misjudging the distance of an approaching automobile, [citation], and failing to look before making a left turn, [citation]. Such issues are not unknown in products liability cases." 116 Ill. App. 2d 109, 136.

■ Defendant moved for a directed verdict at the close of plaintiff's case. In denying the motion, the trial court found that defendant "knew of the dangerous condition of asbestos from the time as early as the [19]30's and surely from 1964 on" and yet failed to take any real measures to protect the public until December of 1970. Our review of the record supports the trial court's decision to submit the issue of punitive damages to the jury.

## B

■ ■ Defendant's next argument is that the trial court committed error by not setting aside the verdict for punitive damages. A trial court's decision to award punitive damages will not be reversed absent an abuse of discretion. (*Four "S" Alliance, Inc. v. American National Bank & Trust Co.* (1982), 104 Ill. App. 3d 636, 432 N.E.2d 1213.) The question for review, therefore, is whether the facts of the case warrant imposing punitive damages. (*Yearian v. Columbia National Bank* (1980), 86 Ill. App. 3d 508, 408 N.E.2d 63.) "The question of wilful and wanton conduct is essentially whether the failure to exercise care is so gross that it shows a lack of regard for the safety of others." (*Moore v. Jewel Tea Co.* (1969), 116 Ill. App. 2d 109, 136, 253 N.E.2d 636, *aff'd* (1970), 46 Ill. 2d 288, 263 N.E.2d 103.) "Ill-will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and conditions, that his conduct will naturally and probably result in an injury." *Streeter v. Humrichhouse* (1934), 357 Ill. 234, 238, 191 N.E. 684.

In *Moore*, a woman was blinded when an unopened can of Drano exploded in her bathroom. She subsequently brought suit against the

manufacturers of the can and the product as well as the retailer. At trial, the evidence showed that the defendant manufacturer knew that the caustic soda contained in Drano was greatly destructive to human tissue, particularly the eyes, and yet never warned the public of this danger. The evidence also showed that the defendant had received notice of prior explosions. A verdict for compensatory and punitive damages was upheld. Commenting on this result, the court in *Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102, 427 N.E.2d 608, *appeal denied* (1982), 88 Ill. 2d 551, said:

> "The facts presented by *Moore v. Jewel Tea Co.* (1969), 116 Ill. App. 2d 109, 253 N.E.2d 636, *aff'd* (1970), 46 Ill. 2d 288, 263 N.E.2d 103, have become the standard by which claims for punitive damages are measured in Illinois. [Citation.] The appellate court's decision in *Moore*, however, was based on an especially sympathetic set of facts: (1) the corporation's knowledge of the danger inherent in the product, (2) the failure to warn the public of that danger, and (3) notice to the corporation of prior claims of spontaneously exploding cans of Drano. Although *Moore* may represent a classic case in which an award of punitive damages is proper, it would not be appropriate to require the facts in other cases to be as egregious as those presented by *Moore* to pose a jury question on the issue of punitive damages." 100 Ill. App. 3d 1102, 1112-13.

The facts in the instant case follow *Moore*. Plaintiff presented evidence during the trial of defendant's knowledge of the dangers of asbestos. Sections of minutes taken at the NIMA meetings in 1958 and 1964 were read into the record. The minutes showed that one of the directors of the defendant was in attendance at each meeting and that the defendant was a charter member. At the 1964 meeting, Johns-Manville Sales Corporation reported that it was printing health and use warnings on its packages of asbestos products. The warnings cautioned the prospective user that "[i]nhalation of asbestos in excessive quantities over long periods of time" could be harmful and urged the user to avoid breathing asbestos dust and wear a respirator in the event of inadequate ventilation.

Plaintiff also presented extensive evidence through its experts that literature regarding the dangers of asbestos was readily available to both physicians and members of the industry in the 1920's and thereafter.

Defendant contends that the punitive damage award should be set aside because the plaintiff submitted no evidence of corporate complicity at trial. In *Mattyasovszky v. West Towns Bus Co.* (1975), 61

Ill. 2d 31, 36-37, 330 N.E.2d 509, relied upon by defendant, the Illinois Supreme Court held that a plaintiff seeking the imposition of punitive damages against a corporation must show that the superior officers ordered, participated in, or ratified outrageous misconduct. In the instant case, plaintiff proved that corporate officers Ike Keith and David Maxam participated in or ratified the acts of defendant corporation.

■ Defendant also contends that it acted promptly to place warnings and to later remove asbestos from its products after it discovered the harmful effects of asbestos in 1969. The record does not support this argument. Defendant could have put detailed warnings on its products in 1964, or earlier, but failed to do so. Defendant also could have taken the asbestos out of its products much earlier than December of 1970. As Dr. Schepers testified, fiberglass and mineral wool were available to manufacturers as substitutes for asbestos as early as 1954, and yet they were not used because asbestos was cheaper. Defendant did not have to wait until 1970 to try to develop substitute products for its customers and cannot now claim that it acted "promptly and reasonably." In addition, defendant's argument on this issue has been advanced unsuccessfully by asbestos manufacturers in other cases. In *Moran v. Johns-Manville Sales Corp.* (6th Cir. 1982), 691 F.2d 811, 816, for example, Johns-Manville argued that there was "no conduct to deter" because it changed its products in the 1960's. The Sixth Circuit Court of Appeals disagreed and held that whether a particular course of conduct has ceased is irrelevant to the accomplishment of the purpose of deterring others. The record in this case supports an award of punitive damages.

C

Finally, regarding punitive damages, defendant argues that the award was excessive.

■ In Illinois, the amount of punitive damages awarded to a plaintiff is a matter for the discretion of the jury. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 937, 419 N.E.2d 578.) A reviewing court is entitled to reduce the award only when the amount is clearly excessive. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188, 384 N.E.2d 353.) The most comprehensive treatment of this issue is found in *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199. The *Hazelwood* court noted that there are no clear guidelines in Illinois for determining when a punitive damage award is excessive. The court enumerated a three-factor test which should be considered when determining

whether a punitive damage award is excessive: (1) the nature and enormity of the wrong; (2) the financial status of the defendant; and (3) the potential liability of the defendant. 114 Ill. App. 3d 703, 712-13, 450 N.E.2d 1199.

■ We have already discussed, in sufficient detail, the evidence presented to the jury and the justification for the award of punitive damage. There is no need to be repetitive at this point. However, the evidence that should be emphasized is the testimony of the president of defendant corporation regarding substantial financial losses incurred by defendant during the three years prior to trial. There was no evidence of insolvency. Defendant's recent financial reversals may well have been a factor in the jury's awarding punitive damages in an amount less than one-third of the compensatory damages.

Defendant calls our attention to the fact that under Illinois law it is against public policy to insure a defendant for the payment of punitive damages and, therefore, the satisfaction would have to come from corporate funds and not insurance proceeds. (*Beaver v. Country Mutual Insurance Co.* (1981), 95 Ill. App. 3d 1122, 420 N.E.2d 1058.) The fact that this is a correct statement of the law is more unfortunate for the plaintiff rather than the defendant. Since the defendant filed for protection under chapter 11 of the Bankruptcy Act on the date its post-trial motion was originally set for hearing, defendant's assets were effectively put out of the reach of plaintiff for the satisfaction of the punitive damage judgment which was later entered by the trial court.

Defendant also asserts that plaintiff's punitive damage award was the precipitating factor in its bankruptcy filing under chapter 11 and that upholding the award may result in a stampede to the courthouse. This cannot occur, since defendant's brief states that it already is a defendant in 27,000 asbestos cases throughout the country. If anything, the bankruptcy proceedings may discourage some future claims. Since the chapter 11 proceeding is a protective device for defendant, it cannot be used as a factor to set aside the award of punitive damages.

Our review of the record leads us to the conclusion that the punitive-damage award is not excessive.

### III

■ Defendant contends that a series of errors dealing with evidence, continuance, and instructions, individually or cumulatively, resulted in the denial of a fair trial. Relying on *Sindell v. Abbott Laboratories* (1980), 26 Cal. 3d 588, 607 P.2d 924, *cert. denied* (1980), 449

U.S. 912, 66 L. Ed. 2d 140, 101 S. Ct. 286, defendant sought to present evidence of its low market share of asbestos products. The *Sindell* market-share theory is not applicable where the plaintiff has offered evidence that identified defendant's product as the cause of his injury. (*In re Related Asbestos Cases* (N.D. Calif. 1982), 543 F. Supp. 1152.) This evidence was properly excluded.

 Defendant asserts that the trial court wrongfully excluded evidence of plaintiff's exposure to other products. Illinois courts have long recognized that there can be more than one proximate cause of an injury. "In such a situation, one guilty of negligence cannot avoid responsibility merely because another person is guilty of negligence contributing to the same injury ***." (*Sears v. Kois Brothers Equipment, Inc.* (1982), 110 Ill. App. 3d 884, 889, 443 N.E.2d 214, *appeal denied* (1982), 93 Ill. 2d 548.) Under *Romine v. City of Watseka* (1950), 341 Ill. App. 370, 377, 91 N.E.2d 76, where such guilt exists, "it is no defense that some other person, or thing contributed to bring about the result for which damages are claimed. Either or both parties are liable for all damages sustained." Thus, the fact that plaintiff used a variety of asbestos products does not relieve defendant of liability for his injuries. Evidence of such exposure is not relevant.

 Defendant asserts that the trial court erred in allowing the testimony of plaintiff's medical experts. The doctors testified as to the state of knowledge in the medical community and the asbestos industry regarding the health hazards of exposure to asbestos. Because this information is probative of the information available to defendant, the trial court did not err in admitting such testimony. *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 473 N.E.2d 1322, *appeal denied* (1985), 106 Ill. 2d 555.

 Defendant argues that the trial court erred in admitting color photographs of lung tissue taken from plaintiff. The photographs were used to describe how the inhalation of asbestos fibers affect lung tissue. Photographs which illustrate the subject matter of testimony are admissible in evidence for the purpose of assisting the jury in applying the testimony more intelligently to the facts shown. (*Knott v. Freuhauf Trailer Co.* (1962), 35 Ill. App. 2d 174, 182 N.E.2d 373.) Therefore, the court did not abuse its discretion in admitting these photographs.

 Defendant also claims error because it was denied continuances which were based on the fact that a certain medical expert would not be available at the trial, a breakdown of certain sound equipment on a deposition video, and the engagement of one of its attorneys in another trial.

A litigant has no absolute right to have a case continued. (*Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 435 N.E.2d 852, *appeal denied* (1982), 91 Ill. 2d 581.) The granting or refusal of a continuance rests within the sound discretion of the trial court, and a reviewing court should not interfere with the exercise of that discretion unless there has been a manifest abuse of such discretion or a palpable injustice apparent in the record on appeal. (*Economy Fire & Casualty Co. v. Warren* (1979), 71 Ill. App. 3d 625, 390 N.E.2d 361.) A decisive factor in determining the propriety of the trial court's exercise of its discretion in ruling on a motion for continuance is whether the party applying for continuance has shown a lack of due diligence in proceeding with the cause. (*Bullistron v. Augustana Hospital* (1977), 52 Ill. App. 3d 66, 70, 367 N.E.2d 88.) Once a case has reached the trial stage, the moving party must give especially grave reasons for continuance because of the potential inconvenience to the witnesses, the parties, and the court. (*Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 435 N.E.2d 852.) In this case, the defendant was able to offer sufficient expert testimony to have its theory before the jury. The audio breakdown was handled by permitting defendant to read the expert's deposition, so this evidence was also before the jury.

The second basis for continuance was that the senior partner of the firm representing the defendant was scheduled to be on trial in another case in Kane County beginning on February 19. This was the first time this attorney's name was mentioned in connection with this trial. His appearance was not filed until the day before trial. He did not appear at any of the depositions or other pretrial proceedings. Where more than one attorney is involved in a case, the absence of one of the attorneys at the time of trial does not necessarily mean that the cause must be continued. (*Gould v. Elgin City Banking Co.* (1981), 136 Ill. 60, 63-64, 26 N.E. 497.) This is especially so where the attorney who tries the case has been involved since its inception. *Ostro, Inc. v. Boydston Brothers, Inc.* (1944), 323 Ill. App. 137, 143, 54 N.E.2d 742.

In light of the foregoing, the court did not err in refusing the motions for continuance.

We do not want to prolong this opinion by commenting on every evidentiary and instruction ruling which defendant claims to be erroneous. Our review of the record satisfies us that defendant received a fair trial in this regard. Any errors, if they could be classified as such, would not individually or cumulatively rise to the level of reversible error.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and STAMOS, J., concur.