**James J. CASH, Plaintiff–Appellee, Cross–Appellant,**

v.

**BELTMANN NORTH AMERICAN COMPANY, INCORPORATED, Defendant–Appellant, Cross–Appellee.**

**Nos. 89–2068, 89–2155.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1990.

Decided April 17, 1990.

David J. Brody, Widett, Slater & Goldman, Boston, Mass., Ralph E. Brown, Walsh, Case, Coale & Brown, and Richard Horn, Chicago, Ill., for Quality Care–USA, Inc., plaintiff-appellee.

Merle L. Royce, John M. Bowlus, Chicago, Ill., for defendants-appellants.

Stephen B. Horwitz, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for James J. Cash, plaintiff-appellee.

William T. Coleman, Susan M. Langlotz, Hedberg, Tobin, Flaherty & Whalen, Harvey N. Levin, Cairns & Levin, Rita A. Long, and Anthony S. Graefe, Naphin, Banta & Cox, Chicago, Ill., for Beltmann North American Co., Inc., defendant-appellant.

Before CUMMINGS, WOOD, Jr., and FLAUM, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

In the summer of 1985, the Illinois state agencies located in downtown Chicago's State of Illinois Building were relocating across the street to the new State of Illinois Center. The state solicited bids from moving companies and awarded a contract to defendant Beltmann North American Company ("Beltmann"). Not content with the contract price, Beltmann intentionally overcharged the state by $134,767.

In his capacity as a sales representative for Beltmann, plaintiff James J. Cash partially supervised the move. Cash primarily inventoried the items to be moved, and, through this task, Cash quickly discerned that Beltmann was overcharging the state. When Cash discovered the overcharge was part of a deliberate scheme by Beltmann to make more money on the state contract than it had bid, Cash refused to participate and used leave time to stay home from work. After a month away from work, Beltmann discharged Cash. Later that year, Cash informed a state employee responsible for Beltmann's account that the company could not substantiate the charges it was making to the state. Although vehemently denied by Beltmann, Cash presented evidence at trial showing that Beltmann discharged him for refusing to participate in its chicanery.

Cash filed a three-count diversity action against Beltmann, alleging retaliatory discharge, wrongful discharge, and wages due and owing under Illinois statute. At trial, the plaintiff withdrew his claim for wages, and the court dismissed his claim for wrongful discharge; these claims are

therefore not germane to this appeal.[1] On the retaliatory discharge count, a jury returned a verdict for Cash in the amount of $250,000 for compensatory damages and $137,409 for punitive damages. The defendant then moved to set aside the verdict or, in the alternative, for a reduction of the punitive damages. The trial court orally denied these motions stating:

> On the punitive, it is pretty clear what the jury did, in my mind at least, and that is that they set that amount on the amount they thought the state was overcharged by Beltmann, and that raised the question in my mind as to whether that is a meaningful sort of an amount to use as the yardstick to punish and I can't really see why it isn't.

After entry of a final order, Beltmann has now appealed, admitting liability for retaliatory discharge but contesting the punitive damages award.[2]

At oral argument, Beltmann conceded that our decision in the related case of *United States Fire Insurance Co. v. Beltmann North American Co.*, 883 F.2d 564 (7th Cir.1989) forecloses the question of whether punitive damages are available in this case. In *United States Fire Insurance,* Beltmann's liability insurer disputed whether its policy covered Cash's claim for retaliatory discharge. Specifically, Beltmann's insurer argued that it had no duty to defend Cash's suit under a policy provision excluding offenses committed with actual malice. We agreed and stated, "Cash's claim of retaliatory discharge carries with it a charge of actual malice

subsumed within the elements of his claim." 883 F.2d at 569. Because Cash prevailed on his retaliatory discharge count, he has necessarily proven actual malice, which is a necessary threshold for punitive damages in Illinois. *See, e.g., Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 186, 384 N.E.2d 353, 359, 23 Ill.Dec. 559, 565 (1979). Therefore, the only remaining issue on appeal is whether punitive damages were appropriately set at $137,409.

The factors a jury may consider in determining the amount of punitive damages are governed by state law. *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, —— U.S. ——, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989). Federal law, however, governs the district court's review of the jury award and appellate court review of the district court's decision. *Id.; Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649–50, 97 S.Ct. 835, 836–37, 51 L.Ed.2d 112 (1977). These rules may have little practical significance here, because there is no indication that Illinois law misdescribes the proper standards of review in federal court. *See AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1043 (7th Cir. 1990). Simply stated, we will review the district court's determination on the issue of the size of a jury verdict under an abuse of discretion standard. *Browning–Ferris,* 109 S.Ct. at 2922. Where a district court does not use the appropriate factors in exercising its discretion, however, an abuse of discretion can occur. *E.g., Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1159 (7th Cir.1989); *Kasper v. Board of*

---

1. In appeal number 89–2155, the plaintiff filed a cross-appeal from the district court's dismissal of his wrongful discharge claim. Beltmann now concedes liability on the retaliatory discharge count and only appeals the amount of punitive damages. Because the compensatory damages on the retaliatory discharge claim subsume the contract damages he would have received on the wrongful discharge claim, the plaintiff concedes his cross-appeal is now moot. Accordingly, plaintiff's cross-appeal in number 89–2155 is dismissed.

2. A panel of this court has recently described judicial review of verdicts as a "division of functions ... with constitutional overtones." *AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1043 (7th Cir.1990). Following

its own precedent, the Supreme Court has recently declined to hold expressly that the seventh amendment allows appellate review of a district court's denial of a motion to set aside a jury verdict as excessive. *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 2922 n. 25, 106 L.Ed.2d 219 (1989). Nevertheless, at the time of *Grunenthal v. Long Island R.R.*, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968), the courts of appeals were unanimous in holding that such appellate review is allowed. *Id.* at 157 n. 3, 89 S.Ct. at 332 n. 3; *see also Bucher v. Krause*, 200 F.2d 576, 586–87 (7th Cir.1952). Cash has not suggested that the Supreme Court's reservation of the issue in *Browning–Ferris* casts doubts on this long line of cases.

*Election Comm'rs,* 814 F.2d 332, 339 (7th Cir.1987).

■ Under the circumstances, we believe the district court abused its discretion. We agree with the district court's analysis identifying the crucial issue as whether Beltmann's overcharge is an appropriate measure for the amount of punitive damages but disagree with the proposition that Illinois law considers Beltmann's overcharge to the state a dominant factor in redressing the wrong done to Cash. In Illinois, three factors determine the proper amount of punitive damages: (1) the nature and enormity of the wrong; (2) the financial status of the defendant; and (3) the potential liability of the defendant. *Hazelwood v. Illinois Cent. Gulf R.R.,* 114 Ill. App.3d 703, 712–14, 450 N.E.2d 1199, 1207–08, 71 Ill.Dec. 320, 328–29 (1983); *accord Motsch v. Pine Roofing Co.,* 178 Ill.App.3d 169, 178, 533 N.E.2d 1, 7, 127 Ill.Dec. 383, 389 (1988); *Lipke v. Celotex Corp.,* 153 Ill.App.3d 498, 507–08, 505 N.E.2d 1213, 1220, 106 Ill.Dec. 422, 429 (1987), *appeal dismissed,* 536 N.E.2d 71, 129 Ill.Dec. 387 (1989). The first factor instructs us to focus on the nature and enormity of the wrong done to Cash, which is his retaliatory discharge. Therefore, the punitive damages award should be set aside if it exceeds the amount necessary to deter and punish Beltmann and similarly situated companies for discharging an employee in

retaliation for reporting illegal conduct. *See, e.g., Tolliver v. Amici,* 800 F.2d 149, 151 (7th Cir.1986); *Hamilton v. Svatik,* 779 F.2d 383, 389 (7th Cir.1985). The district court, by suggesting the $134,767 overcharge to the state of Illinois justified the $137,409 in punitive damages, impermissibly shifted the inquiry from the wrong inflicted on Cash to the wrong suffered by the state. A suit by the state of Illinois was the proper avenue for forcing Beltmann to disgorge the $134,767 overcharge, but, for unknown reasons, the state chose not to pursue this course of action.

To achieve the objectives of deterrence and punishment, the punitive damages award of $137,409 is excessive. The size of any punitive damages award is relative, even a two million dollar award can be warranted. *See West v. Western Casualty & Sur. Co.,* 846 F.2d 387, 400–01 (7th Cir. 1988). The record in this case, however, reveals that Beltmann's coffers are not so large that a smaller punitive damages award will go unnoticed.[3] Also, because its pattern of overcharging the state was likely to continue despite Cash's absence, Beltmann gained little by dismissing Cash. Thus, the amount needed to deter Beltmann and others from firing employees in a position similar to Cash is a figure less than the total of Beltmann's ill-gotten gains from the state of Illinois.

---

**3.** Our research reveals that a typical ratio for a punitive damages award to a defendant's net worth may be around one percent. *See, e.g., Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394 (5th Cir.) (two defendants, award represented 0.027% and 1.25% of their respective net worths), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Spaeth v. Union Oil Co.,* 762 F.2d 865 (10th Cir.1985) (0.06% of net worth), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986); *Kociemba v. G.D. Searle & Co.,* 707 F.Supp. 1517 (D.Minn.1989) (0.81% of net worth); *City of Greenville v. W.R. Grace Co.,* 640 F.Supp. 559 (D.S.C.1986) (0.07% of net worth), *aff'd,* 827 F.2d 975 (4th Cir.1987); *Bemer Aviation, Inc. v. Hughes Helicopter, Inc.,* 621 F.Supp. 290 (E.D.Pa.1985) (0.21% of net worth), *aff'd,* 802 F.2d 445 (3d Cir.1986); *Loitz v. Remington Arms Co.,* 177 Ill.App.3d 1034, 532 N.E.2d 1091, 127 Ill.Dec. 262 (1988) (less than 1.00% of net worth), *leave to appeal allowed,* 126 Ill.2d 560, 541 N.E.2d 1107, 133 Ill.Dec. 669 (1989); *cf. TDS, Inc. v. Shelby Mut. Ins. Co.,* 760

F.2d 1520 (11th Cir.1985) (1.05% of net assets). *But see, e.g., Professional Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.,* 727 F.2d 1470 (9th Cir.1984) (upholding punitive damages award representing approximately 40% of one defendant's net worth); *Sperry–Rand Corp. v. A–T–O, Inc.,* 447 F.2d 1387 (4th Cir.1971) (reducing punitive damages award to 23.33% of defendant's net worth), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1292, 31 L.Ed.2d 479, 409 U.S. 892, 93 S.Ct. 117, 34 L.Ed.2d 150 (1972). Based on its 1985 corporate tax return, Beltmann states that $137,409 in punitive damages represents 8.29% of its net worth. Financial data prepared for income tax purposes and four years old at the time of trial provides weak evidence of Beltmann's true net worth. Nevertheless, the gross disparity between the ratio of punitive damages to net worth in this case as compared to the ratio in other cases suggests that the award may be a dangerous financial drain on Beltmann.

█ We have the same power to issue a remittitur as the trial court, *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1554 (7th Cir.1990); *DeRance, Inc. v. Painewebber Inc.*, 872 F.2d 1312, 1331 (7th Cir.1989), and, while we do not wish to downplay the seriousness of the fraud perpetrated by Beltmann, we believe a figure of $75,000 in punitive damages would sufficiently serve the dual purposes of deterrence and punishment. Such an award is large enough that it will sting Beltmann's pocketbook and make it think twice before committing similar acts in the future. At the same time, the reduced award avoids overwhelming financial damage to Beltmann and reduces the windfall to the plaintiff, a bonus gratuitously based on the gravity of the harm Beltmann inflicted on the state of Illinois, not on him. Therefore, in addition to dismissing Cash's cross-appeal, we remand this case to the district court with directions to enter an order for a new trial on the issue of punitive damages, unless plaintiff Cash is willing to accept a remittitur of the punitive damages to $75,000. Each party should bear their own costs.

REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.