**GRAMERCY MILLS, INC., Plaintiff–Appellant and Cross–Appellee,**

v.

**Myron WOLENS, Defendant–Appellee and Cross–Appellant.**

Nos. 94–3091, 94–3202.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1995.

Decided Aug. 15, 1995.

John H. Anderson, Daniel J. Voelker (argued), Christopher V. Langone, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for plaintiff-appellant.

Anthony C. Valiulis, Maria F. DiLorenzo, Penny T. Brown (argued), Much, Shelist, Freed, Denenberg & Ament, Chicago, IL, for defendant-appellee.

Before EASTERBROOK and KANNE, Circuit Judges, and SHARP, Chief District Judge.[*]

KANNE, Circuit Judge.

This case involves a dispute between Gramercy Mills (Gramercy), a New Jersey corporation that designs and produces swim wear and fashion clothing for girls, and Myron Wolens, an Illinois resident and former Gramercy sales representative. Gramercy sued Wolens in New Jersey state court, alleging various causes of action based on inflated orders Wolens had submitted to Gramercy. Wolens, an Illinois citizen, then removed the action to the United States District Court for the District of New Jersey and, upon Wolens' motion, that court transferred the case to the United States District Court for the Northern District of Illinois, Eastern Division.

In its final form, Gramercy's complaint alleged misrepresentation, breach of contract, breach of fiduciary duty, negligent misrepresentation, and breach of agency agreement. Gramercy sought damages of $47,000.00 plus interest and costs. Wolens counterclaimed against Gramercy, alleging wrongful termination and violation of the Illinois Sales Representative Act, 820 ILCS 120–120/3 (Sales Act). He sought $31,000 in unpaid commissions that Gramercy owed him. The district court, finding that Illinois law applied to this diversity action, allowed Wolens to proceed on his claim under the Sales Act.

After a trial, the jury returned a verdict in favor of Gramercy on its claim for misrepresentation in the amount of $11,612.90. The district court awarded Gramercy an additional $1,500.00 for another claim against Wolens. The jury also returned a verdict in favor of Wolens based on his claim under the Sales Act and awarded him $32,057.39 in

[*] The Honorable Allen Sharp, Chief Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

actual damages and $32,057.39 in punitive damages. The district court subtracted the amounts due to Gramercy by Wolens, $13,-112.90, from the commissions due Wolens by Gramercy, $32,057.39, for a difference of $18,944.49. The court then added prejudgment interest on the $18,944.49 to arrive at the figure $22,233.39 for the amount due Wolens from Gramercy, excluding punitive damages. Adding in the exemplary damages, the district court entered a single judgment against Gramercy and in favor of Wolens in the amount of $54,290.79, plus costs and attorneys fees in an amount to be determined later. The costs and attorneys fees are not part of this action.

In its appeal, Gramercy alleges that the district court erred in applying Illinois law to this dispute and that the jury's award of damages to Gramercy based on Wolens' misrepresentations is inconsistent with the jury's award of punitive damages against Gramercy. The punitive damages, argues Gramercy, should therefore be set aside or remitted. Wolens responds that the district court correctly applied Illinois law and that the award of exemplary damages is reconcilable with the verdict against him. Furthermore, Wolens argues that, if we cannot reconcile the two verdicts, we should vacate both awards and allow the district court to retry both claims instead of merely vacating the punitive damages award.

## I. Whether Gramercy Can Appeal the District Court's Decision to Apply Illinois Law

Before we can address the choice of law issue, Wolens argues, we must consider whether Gramercy properly preserved this issue. We recently stated that we cannot review the denial of a motion for summary judgment after a full trial on the merits of a claim. *Watson v. Amedco Steel, Inc.,* 29 F.3d 274, 277 (7th Cir.1994). In that case, Watson claimed that Amedco had violated the Age Discrimination in Employment Act. In moving for summary judgment, Amedco claimed that Watson's position had been eliminated due to workforce reduction and redundancy. Watson filed a cross motion stating that this explanation was, as a matter

of law, an insufficient response to Watson's *prima facie* case. The district court concluded that factual issues necessitated a jury trial. The jury returned a verdict in favor of Amedco. Noting that, in denying a motion for summary judgment, the court decides only whether the case should go to trial and that denial does not settle any of the merits of the claim, we ruled that the denial of a motion for summary judgment is not subject to review when the district court has conducted a full trial on the merits of the claim. *Id.* at 277.

Gramercy filed a pleading entitled "Pretrial Motion." In that motion Gramercy requested the court to hold a pretrial hearing to determine whether it should apply New Jersey law or Illinois law. In that same motion, Gramercy alternatively sought summary judgment.

■ Gramercy's position is that its request for the court to apply New Jersey law, or at least to hold a hearing to determine which state's law to apply, was distinct from its alternative request for summary judgment. We agree. Judges, not juries, decide questions of law, such as choice of law issues. Gramercy's motion, at least as far as it pertained to the choice of law issue, was not equivalent to a motion for summary judgment, a motion that attempts to avoid a trial based on a lack of disputed facts. *See* FED. R.CIV.PRO. 56(c). As we noted in *Watson,* it would make little sense to let a jury decide which facts are true and then to say that there was never a dispute to begin with. As for the choice of law decision, however, the jury never gets a crack at deciding the outcome; choice of law merely serves as a predicate for the jury's work.

■ Moreover, one may not bring an interlocutory appeal of a district court's choice of law determination. *Freeman v. Kohl & Vick Machine Works, Inc.,* 673 F.2d 196, 201 (7th Cir.1982). In *Freeman* we concluded that a party must wait until the conclusion of the case to appeal the district court's choice-of-law decision. The choice of law determination does not create a collateral right separable from the substantive rights litigated in the action. *Id.* And, because "the order denying the motion for summary judgment,

the making of a conflict of laws determination, and the holding that an asserted immunity from indemnification is inapplicable, is subject to effective review after final judgment," there was no need for a party to appeal the choice of law determination until the court issued a final judgment. *Id.*

After *Watson,* of course, and contrary to the observation in *Freeman,* a summary judgment ruling is not appealable following final judgment on the merits. Nevertheless, the concept expressed in *Freeman* is consonant with our view that choice of law issues are distinct from summary judgment issues. That is, a district court's determination that one state's laws apply may in turn lead to or preclude summary judgment because that state's law does or does not provide the relief prayed for. However, the choice of law decision is sufficiently independent of the ultimate summary judgment inquiry—whether there are disputed facts that would lead to different legal results depending upon how they are interpreted—to warrant review independent from any available review of the ultimate summary judgment decision. Therefore, we shall review Gramercy's appeal of the district court's choice of law.

## II. Whether the District Court Properly Determined Choice of Law

Gramercy advances two reasons for us to decide that the district court should have applied New Jersey law. First, Gramercy argues that under 28 U.S.C. § 1404, the district court should have initially applied New Jersey choice of law principles because this case was transferred from a New Jersey federal court. However, Gramercy has forfeited this argument because it never made it to the district court. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 20 F.3d 713, 719 (7th Cir.1994), *reversed on other grounds,* —— U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).

Gramercy's .second argument is that the Illinois District Court erred in finding that, under Illinois choice of law, the court should apply Illinois law. A district court applies the choice of law rules of its forum state. *Klaxon Co. v. Stentor Electric*

*Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). We review choice of law *de novo. Nucor v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 581 n. 8 (7th Cir. 1994). Illinois has adopted the Restatement (Second) of Conflicts for resolving choice of law issues. *See Palmer v. Beverly Enters.,* 823 F.2d 1105, 1107 (7th Cir.1987). Section 188(2) of the Restatement (Second) provides five factors relevant in making choice of law determinations: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, place of incorporation, and place of business of the parties. Further, § 188(3) states that where the place of negotiating a contract and the place of performance are the same state, that state's laws will generally apply.

The district court determined that Illinois, not New Jersey, had the most significant contacts to the case and that, therefore, Illinois law should apply. We agree with the district court.

It is not clear where the agreement was formed, but Wolens maintains in a supporting affidavit that the place of contracting was in Chicago. Gramercy disputes the place of negotiation and contracting only by arguing that there was no agreement with Wolens until Gramercy gave orders from its New Jersey headquarters to one of its manufacturing sites outside of New Jersey to ship the goods that one of Wolens' customers had ordered. Certainly, Wolens did not earn his commission for each sale until shipment, but that does not mean that each shipment was a separate contract for Wolens to be Gramercy's sales representative. On the contrary, that relationship, as Gramercy concedes, was established when Gramercy retained Wolens as an independent sales representative. The individual shipments were contracts with buyers, not Wolens. Gramercy's agreement to pay Wolens 5% of gross sales is the relevant agreement, and Gramercy does not dispute Wolens' claim that this agreement arose in Illinois. Similarly, the subject matter of the contract was Wolens' services, which he rendered in Illinois and the Midwest. Even if we were to suppose that the subject matter of the contract were the clothing sold to

customers, this would not favor New Jersey because the clothing was manufactured in and shipped from states other than New Jersey.

Wolens' place of performance was predominantly Illinois. Even though Wolens solicited orders from business outside Illinois, Illinois was the center of his activities. *Cf. Palmer,* 823 F.2d 1105, 1110 (finding that part performance in eight western states, including California, favored application of California law when plaintiff worked mainly in California). Finally, as Wolens lives and maintains an office in Illinois and Gramercy is headquartered in New Jersey, domicile is equally split.

Gramercy contends that the place of nonperformance is most important, and, in this case, favors New Jersey law, citing *McIntosh v. Magna Sys., Inc.,* 539 F.Supp. 1185, 1189 (N.D.Ill.1982). However, relying solely on the place from which one party would have mailed a check if it had chosen to do so would undermine the more circumspect inquiry the Restatement (Second) affords. It does not provide much information on the issue of which state has a greater interest in the litigation. If this proposition were applied in all cases, principals could merely determine which state's law were most favorable and argue that they "nonperformed" there. The place of breach lies in the eye of the beholder. In this case, for example, Wolens contends that Gramercy breached when he did not receive payment in Illinois, and thus the place of nonperformance is where Wolens did not receive his commissions. More reliable barometers of the site of performance include inquiring what performance formed the basis for the agreement and what action actually occurred in performance of the agreement. In this case, Wolens' work soliciting orders on behalf of Gramercy was the basis for the agreement and Wolens performed some of that work in Illinois. Based on Illinois' significant contacts with this dispute, we concur with the district court that Illinois law applies to this case.

### III. Whether the District Court Abused Its Discretion in Awarding Punitive Damages

 Finally, Gramercy argues that the district court incorrectly awarded punitive damages to Wolens. We review the district court's entry of judgment of punitive damages for abuse of discretion. *Cash v. Beltmann North Am. Co.,* 900 F.2d 109, 110 (7th Cir.1990). An abuse of discretion occurs when a court applies the wrong legal standard or considers inappropriate factors in reaching a conclusion of law. *Id.* The proper inquiry is whether a reasonable person using the proper legal standard could agree with the district court. *United States Equal Employment Opportunity Comm. v. Century Broadcasting Corp.,* 957 F.2d 1446, 1460 (7th Cir.1992).

 The Illinois Sales Representative Act provides for exemplary damages as follows:

A principal who fails to comply with the provisions of § 2 concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed three times the amount of the commissions owed to the sale representative. Additionally, such principals shall pay their sales representatives a reasonable attorney fee and court costs.

820 ILCS 120/3.

Courts will award exemplary damages only when the sales representative proves that the principal willfully and wantonly refused to pay. *Century Broadcasting,* 957 F.2d at 1460. Illinois courts caution against awarding exemplary damages under the Sales Act except to "punish and deter intentional or egregious conduct." *Zavell & Assocs., Inc. v. CCA Indus., Inc.,* 257 Ill.App.3d 319, 195 Ill.Dec. 586, 588, 628 N.E.2d 1050, 1052 (1993).

Gramercy complains that the jury determination in its favor on its claim of Wolens' misrepresentation is irreconcilable with the jury's punitive damages sanction against Gramercy. Gramercy argues that the standard for exemplary damages could not have been met if the jury also returned a verdict in its favor.

 Federal Rule of Appellate Procedure 10(b)(2) requires that a transcript be included in the record on appeal where a

party challenges that insufficient evidence supports a verdict. However, Gramercy did not request that the trial transcript be included in the record on appeal. As a result we are unable to evaluate the evidence submitted in this case. Such an omission is grounds for forfeiture of a claim.[1]

Gramercy protests in its reply brief that it does not challenge the sufficiency of the evidence in support of the punitive damages and that, therefore, no transcript is necessary. Instead, Gramercy argues that, because it had a valid claim against Wolens, it was justified as a matter of law in not paying Wolens his commissions until after a judicial determination of the amount by which Wolens had damaged Gramercy. Moreover, even if it were not justified in waiting, it did not have the requisite intent as a matter of law to be liable for punitive damages.

Belying this position, however, are Gramercy's repeated references in its brief (obviously without citation to a transcript) asserting support from what the evidence at trial demonstrated. For example, Gramercy states:

> The evidence introduced at trial showed that Gramercy had a good faith and reasonable basis to believe that Wolens had caused it damages in an amount in excess of what it owed Wolens

and:

> Wolens did not introduce any evidence at trial that Gramercy's conduct was "outrageous and the moral equivalent of criminal conduct."

Brief of Appellant at 19, 22.

These are unmistakable references to what evidence the jury did and did not hear, yet we cannot evaluate the accuracy of these assertions of fact because we do not have the transcript of the trial. In addition, Gramercy apparently considers it obvious what precise testimony and facts the jury believed to be true despite the fact that neither special verdict forms nor interrogatories were used.

We do not find matters nearly so clear, and a trial transcript is an essential tool for examining what facts the jury had to support its verdict. We do not know, for example, whether the jury had any basis to reach a conclusion that Gramercy acted willfully, wantonly, egregiously, or in bad faith in withholding Wolens' commissions. And, incidentally, the jury instructions included in the record on appeal are obviously incomplete, so we don't even know in what legal framework the jury considered the evidence and arguments of counsel.

It is our duty to reconcile apparently inconsistent verdicts, if possible, rather than to overturn them. *Century Broadcasting,* 957 F.2d at 1460. This standard puts Gramercy in a difficult position to begin with, a position made impossible by its decision not to provide a transcript. Gramercy failed to comply with FED.R.APP.P. 10(b)(2), thus restricting our ability to review its appeal of the jury's punitive damages award. That appeal is forfeited.

AFFIRMED.

---

1. Such an omission is also grounds for sanctions, *Fisher v. Krajewski,* 873 F.2d 1057, 1068 (7th Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 738 (1990). We have chosen, however, not to order that the transcript be prepared, so we will not order sanctions as the court did in *Fisher.*