**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180152-U

Order filed March 10, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0152 Circuit No. 02-CF-1057 |
| ERIC KENT GLOVER, | ) ) ) | Honorable Carla A. Alessio-Policandriotes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices O'Brien and Wright concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The State's decision to *nolle prosequi* defendant's first degree murder charge and wait approximately 10 years to reindict him did not violate his due process rights, (2) the court properly admitted a portion of the 911 call and M.G.'s 2002 statement into evidence, and (3) the court did not abuse its discretion by denying defendant's motion for continuance.

¶ 2    Defendant, Eric Kent Glover, appeals his conviction for first degree murder. Defendant argues that (1) he was denied due process of law when the State moved to *nolle prosequi* his murder charge in 2003 and waited until 2012 to reindict him, (2) the Will County circuit court

1

violated his confrontation clause rights by admitting a portion of the 911 call and M.G.'s 2002 statement into evidence, and (3) the court erred by denying his motion for a continuance. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4             On July 5, 2002, the State charged defendant with first degree murder (720 ILCS 5/9-1(a) (West 2002)) and unlawful possession of a weapon by a felon (UPWF) (*id* § 24-1.1(a)), alleging that he shot and killed Velma Franklin, his then-girlfriend.

¶ 5             On February 10, 2003, defense counsel filed a motion *in limine* challenging three-year-old M.G.'s capacity to testify, arguing she was incapable of expressing herself and understanding a witness's duty to tell the truth. M.G. was the daughter of defendant and Franklin. M.G. stated during a 2002 interview that she saw defendant commit the charged offense. On February 13, 2003, before the court ruled on defendant's motion *in limine*, the State moved to *nolle prosequi* the murder charge. The court granted the State's motion. The State amended the UPWF charge to base it on an unrelated incident involving defendant. The court convicted defendant of UPWF after a stipulated bench trial, sentencing him to probation.

¶ 6             In 2009, the State resumed their investigation into Franklin's death. During an August 7, 2009 interview, M.G. asserted that she remembered neither the events in question nor her initial 2002 statement.

¶ 7             On May 31, 2012, the State reindicted defendant for first degree murder (*id.* § 9-1(a)). The pretrial proceedings stretched from 2012 to 2017. Before trial, the State moved to admit the recording of M.G.'s 2002 statement into evidence. Defense counsel objected, arguing it violated defendant's confrontation clause rights. The court determined that M.G. was competent to testify at trial and admitted both her 2009 statement and her 2002 statement.

2

¶ 8          During pretrial proceedings, the State sought leave to call witnesses to testify to an April 2002 incident, where defendant allegedly discharged a gun in Franklin's bedroom, embedding a bullet in the wall. The State wished to show that the bullet fired into the wall and the bullet that killed Franklin came from the same gun. Defendant argued this evidence violated his due process rights because the bullet shot into Franklin's wall had been destroyed during a routine evidence purge, and he could not independently verify the State's test results concerning the bullet. Ultimately, the court allowed witness testimony regarding the incident.

¶ 9          Additionally, defendant filed a pretrial motion to dismiss in which he challenged the length of the delay between the 2002 indictment and the 2012 indictment as a due process violation. After a hearing, the court denied the motion, holding there was an "insufficient showing that any delay in prosecuting the Defendant has prejudiced his right to a fair trial." The circuit court found (1) no speedy trial violation because the delay occurred before the second indictment, (2) no due process violation regarding M.G.'s 2002 statement because defendant could cross-examine her regarding her lack of memory, and (3) no due process violation regarding the bullet's destruction because it was neither essential to establish defendant's guilt nor was it materially exculpatory. However, the court determined the destruction of the bullet was a discovery violation and barred evidence that the two bullets had been fired from the same gun.

¶ 10          The court also permitted the State to enter evidence regarding the 911 call that Rosie Fowlkes, Franklin's grandmother, made after discovering Franklin's body.

¶ 11          On November 2, 2017, defendant waived his jury trial right. Four days before the bench trial, the State informed defendant that Dr. Scott Denton would testify regarding the time of death based on rigor mortis. Defense counsel filed a motion to continue, which the State joined.

The court denied the motion, finding the evidence was not newly tendered, as the autopsy report had been available to the parties for over 10 years. The court barred Denton from testifying to the time of death based on rigor mortis but permitted him to respond to a hypothetical question regarding approximately how long it would take a dead body to become fully stiff, based on his medical expertise.

¶ 12       After a bench trial, during which M.G. testified that she did not have any memories of the events surrounding her mother's death and defense counsel cross-examined her regarding her lack of memory, the court found defendant guilty of first degree murder and sentenced him to a natural life's imprisonment. Defendant appeals.

¶ 13                                  II. ANALYSIS

¶ 14       Defendant argues (1) he was denied due process of law when the State moved to *nolle prosequi* the first degree murder charge in 2003 and waited until 2012 to reindict him; (2) the circuit court violated his confrontation clause rights by admitting a portion of the 911 call and M.G.'s 2002 statement into evidence, and the court erroneously admitted into evidence a hearsay statement contained in the 911 call; and (3) the court erred by denying his motion for a continuance.

¶ 15                    A. The State's *nolle prosequi* Decision

¶ 16       First, defendant argues the State violated his due process right by moving to *nolle prosequi* the first degree murder charge in 2003 and waiting until 2012 to bring the charge a second time.

¶ 17       As a preliminary matter, the State argues defendant forfeited this claim by failing to raise this specific issue at trial and by failing to include it in his motion for a new trial. See *People v. Skillom*, 361 Ill. App. 3d 901, 912-13 (2005). To preserve an issue for appellate review, a

defendant must object to it at trial and raise it in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). "An issue raised by a litigant on appeal does not have to be identical to the objection raised at trial, and [the court] will not find that a claim has been forfeited when it is clear that the trial court had the opportunity to review the same essential claim." *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009).

¶ 18    Defendant challenged the length of the State's delay in a motion to dismiss, and the court held there was an "insufficient showing that any delay in prosecuting the Defendant has prejudiced his right to a fair trial." However, defendant did not raise this issue in his posttrial motion. Therefore, the issue is forfeited and can only be reviewed for plain error. The plain error doctrine applies when "a clear or obvious error occurred," and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step of plain error review is to determine whether the court erred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 19    Defendant first challenges the circuit court's denial of his motion to dismiss the charges. We review the court's ruling on the motion for an abuse of discretion. *People v. Walker*, 257 Ill. App. 3d 332, 336 (1993). We review *de novo* claims asserting the denial of due process. See *People v. Hall*, 198 Ill. 2d 173, 177 (2001).

¶ 20    In his motion to dismiss, defendant argued that the State violated his right to due process by waiting nearly 10 years after the initial indictment to refile charges. A delay between an alleged crime and an indictment may violate due process under the fifth amendment if it results

5

in substantial prejudice to the defendant. *People v. Lawson*, 67 Ill. 2d 449, 456-57 (1977); see *United States v. Marion*, 404 U.S. 307, 324 (1971) ("[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay *** caused substantial prejudice to appellees' rights to a fair trial."). If a defendant can demonstrate substantial prejudice, the State must show that the delay was reasonable. *Lawson*, 67 Ill. 2d at 459. If both showings are made, the court must balance the interests of the defendant and the public, considering factors such as the length of delay and the seriousness of the crime. *Id.*

¶ 21        Defendant argues that he suffered substantial prejudice as a result of the delay because the State evaded M.G.'s competency hearing when she was three years old, such that he was unable to meaningfully cross-examine her regarding her 2002 statement, and because the State destroyed the bullet retrieved from Franklin's wall. These contentions fail to rise to the level of substantial prejudice, as defendant received the opportunity to cross-examine M.G. during the subsequent bench trial regarding her lack of memory, and the court prevented the State from arguing the bullet that defendant shot into Franklin's wall and the bullet that killed Franklin came from the same firearm. Because defendant failed to show substantial prejudice, we need not ascertain the reasonableness of the delay. See *id.* at 459-60. The delay between the initial indictment and the reindictment did not violate defendant's due process rights. Since we find the court did not err, we need not proceed to the second step of plain error review.

¶ 22                              B. Evidentiary Determinations

¶ 23        Next, defendant argues the court erred by admitting (1) Fowlkes's statements during her 911 call because they were hearsay statements that did not fall under an exception, and because they violated defendant's confrontation clause right to cross-examine witnesses against him, and

(2) M.G.'s initial statement into evidence when defendant did not have a "meaningful opportunity" to cross-examine M.G. regarding the statement.

¶ 24 The admission of evidence subject to a hearsay exception is reviewed for an abuse of discretion. *People v. Kirchner*, 194 Ill. 2d 502, 539 (2000). Whether the admission of evidence violated a defendant's rights under the confrontation clause is reviewed *de novo*. *Petre v. Kucich*, 331 Ill. App. 3d 935, 941 (2002).

¶ 25         1. Fowlkes's 911 Call

¶ 26 We begin by determining whether Fowlkes's 911 call was impermissible hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). A statement that is hearsay is inadmissible at trial except as provided by the Illinois Rules of Evidence. Ill. R. Evid. 802 (eff. Jan. 1, 2011)

¶ 27 The Illinois Rules of Evidence provide an exception to the hearsay exclusion rule for excited utterances. Ill. R. Evid. 803(2) (eff. Sept. 28, 2018). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* "[T]here must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence." *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). "While the amount of time necessary for fabrication may vary greatly, the critical inquiry with regard to time is whether the statement was made while the declarant was still affected by the excitement of the event." *People v. Connolly*, 406 Ill. App. 3d 1022, 1025 (2011). "The fact that a statement is made in response to an inquiry does not destroy spontaneity." *Id.*

7

¶ 28    Here, Fowlkes's statements during the 911 call were excited utterances because they related to her discovery of Franklin's dead body, which was a startling occurrence, she called 911 immediately after discovering the body, such that there was no time for fabrication, and her statements were made while she was under the excitement of the discovery. Because these statements were excited utterances, they were properly admitted into evidence as excepted from the hearsay exclusion rule.

¶ 29    Next, we must determine whether the 911 call was inadmissible because it violated defendant's right to confront the witness against him. In *Crawford v. Washington*, 541 U.S. 36, 68 (2004) the United States Supreme Court held that, in order for testimonial hearsay to be admissible, a defendant must receive the prior opportunity to cross-examine an unavailable witness. A hearsay statement is testimonial if it is made in a solemn fashion, with the intent to establish a particular fact. *People v. Stechly*, 225 Ill. 2d 246, 281 (2007). When the statement is made in response to questioning, the questioner's intent in eliciting the statement determines whether the statement is testimonial. *Id.* at 284-85.

¶ 30    Fowlkes's statements on the 911 call were nontestimonial, as they were not solemn statements provided to establish a specific fact. See *id.* at 280-81. Instead, they were comments provided to a 911 operator aimed at procuring emergency aid and ensuring effective coordination and safety for the responding emergency medical professionals. The court did not err in admitting her statements from the 911 conversation because they were nontestimonial, and they fell under the excited utterance hearsay exception.

¶ 31                             2. M.G.'s 2002 Statement

¶ 32    We next determine whether the admission of M.G.'s 2002 statement into evidence violated defendant's rights under the confrontation clause. Under section 115-12 of the Code of

8

Criminal Procedure of 1963 and the Illinois Rules of Evidence, a statement of prior identification may be admitted as nonhearsay evidence if the witness testifies at trial, subjects herself to cross-examination, and had the opportunity to perceive the subject of the identification. 725 ILCS 5/115-12 (West 2002); Ill. R. Evid. 801(d)(1)(B) (eff. Oct. 15, 2015).

¶ 33    The confrontation clause does not guarantee the opportunity for an effective cross-examination "in whatever way, and to whatever extent, the defense might wish"—it guarantees "only 'an opportunity for effective cross-examination.' " *United States v. Owens*, 484 U.S. 554, 559 (1988) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)). "It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even *** the very fact that he has a bad memory." *Id.*

¶ 34    Here, M.G.'s 2002 statement was admissible as nonhearsay evidence because it was a statement of prior identification, M.G. had the opportunity to perceive defendant, M.G. testified at trial, and defendant received the opportunity to cross-examine her at trial. Because defendant received the opportunity to cross-examine M.G. at trial, the admission of her 2002 statement into evidence did not violate his confrontation clause rights.

¶ 35    C. Continuance Denial

¶ 36    Defendant argues that the circuit court abused its discretion by denying his motion for a continuance because the court lacked justification for its decision, and the denial prejudiced his opportunity to defend himself.

¶ 37    "It is well settled that the granting or denial of a continuance is a matter resting in the sound discretion of the trial court, and a reviewing court will not interfere with that decision absent a clear abuse of discretion." *People v. Walker*, 232 Ill. 2d 113, 125 (2009). An abuse of discretion will be found only when the circuit court's decision was " 'arbitrary, fanciful[,] or

9

unreasonable[,] or where no reasonable man would take the view adopted by the trial court.' " *People v. Chambers*, 2016 IL 117911, ¶ 68 (quoting *People v. Santos*, 211 Ill. 2d 395, 401 (2004)). When determining whether a court abused its discretion, a reviewing court will consider such factors as "the movant's diligence, the defendant's right to a speedy, fair[,] and impartial trial[,] and the interests of justice." *Walker*, 232 Ill. 2d at 125. A reviewing court will also consider the history of the case, the complexity of the matter, the convenience of the parties and witnesses. *Id.* at 125-26

¶ 38        Applying these factors to the instant case, the court did not abuse its discretion by denying defendant's motion for a continuance. When defendant filed the motion, the case was four days away from trial and the pretrial process had lasted from 2012 to 2017. The parties had access to the autopsy report for approximately 15 years. Thus, the diligence of the parties and the history of the case weighed in favor of denying the motion. While the matter's complexity weighed in favor of granting the motion, as the time of death based on rigor mortis is complex and an important issue in a murder case, the court removed the danger of prejudice by barring the expert witness from testifying to the time of death. The court's decision to deny defendant's motion for a continuation was not arbitrary, fanciful, or unreasonable, and therefore it was not an abuse of discretion.

¶ 39                                III. CONCLUSION

¶ 40        The judgment of the circuit court of Will County is affirmed.

¶ 41        Affirmed.